FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JAN 16 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
PHILIP BARRY,

                Petitioner,

    -against-

UNITED STATES OF AMERICA,

                Respondent.
-------------------------------------------------------X

**MEMORANDUM & ORDER**

14 CV 5898 (RJD)

DEARIE, District Judge.

      Petitioner Philip Barry moves under Rule 60(b)(3), and in the alternative under Rule 60(d)(3), of the Federal Rules of Civil Procedure for relief from the judgment entered pursuant to this Court's Memorandum and Order dated June 17, 2015. The decision, which denied Barry's application for habeas relief under 28 U.S.C. § 2255, is reported electronically at Barry v. United States, 2015 WL 3795866 (E.D.N.Y. June 17, 2015), and fully incorporated here. As the parties are aware, the Court held that the Second Circuit's determination that there was overwhelming evidence of Barry's guilt foreclosed any showing of Strickland prejudice with respect to the 17 trial-based branches of Barry's ineffective assistance of counsel claim. Barry, 2015 WL 3795866 at *3-5. Alternatively, the Court concluded, with respect to the all branches of the claim, that Barry failed to show that counsel performed deficiently within the meaning of Strickland. Id. at *3-13.[1]

      In seeking relief from those rulings now, Barry claims that the government committed fraud upon this Court within the meaning of Rule 60 in its § 2255 opposition brief by inexactly

---

[1] The comprehensiveness of the decision's treatment of Barry's 23 distinct claims obviates the need to revisit here the background facts or ineffective assistance of counsel standards.

summarizing the arguments in Barry's brief, the trial record, and pre-trial proceedings. Barry also claims that the alleged briefing misrepresentations are part of a pattern of fraudulent prosecutorial conduct spanning the entirety of this and other criminal proceedings.

Separately, Barry argues that certain of the Court's remarks in the decision denying habeas relief reflect a lack of impartiality requiring recusal.

For the reasons set forth below, these motions are denied.

## DISCUSSION

## THE RULE 60 MOTION

## Legal Standard

Barry emphasizes in his reply papers that his application is not "a generic motion for reconsideration," Barry Reply, ECF Doc. 17 at 1; instead, Barry asserts that "relief from judgment" is required under Rule 60 because, in the language of subparagraph (b)(3) of that rule, there occurred "fraud..., misrepresentation, or misconduct by the opposing party" or, in the language of subparagraph (d)(3), there occurred "fraud on the court" or the equivalent.[2]

Relief under Rule 60 on the ground of fraud is extraordinarily rare. The type of fraud the rule contemplates is "only that species of fraud which does or attempts to[ ] defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." Pena v. United States, 859

---

[2] Once again, Barry's precision serves him well in that, despite the regular use of the word "reconsideration" in federal jurisprudence, the Federal Rules do not expressly recognize a motion for reconsideration. Instead, the rules authorize the filing of either a motion to alter or amend judgment under Rule 59(e) or a motion seeking relief from judgment under Rule 60. Generally, when the motion seeking to revisit an earlier ruling is filed after the expiration of the 28-day period prescribed in Rule 59, it is treated as falling under Rule 60(b).

2

F.Supp. 2d 693, 699 (S.D.N.Y. 2012) (internal quotation and citation omitted). The party alleging fraud must substantiate the allegations by "clear and convincing evidence of material misrepresentations," Fleming v. New York University, 865 F.2d 478, 484 (2d Cir. 1989), and show that the fraud "seriously affect[ed] the integrity of the normal process of adjudication." Pena, 859 F. Supp.2d at 699 (internal quotation and citation omitted). Accord Rowe Entertainment v. William Morris Agency Inc., 2012 WL 5464611, at *15 (S.D.N.Y. Nov. 8, 2012) (movant alleging Rule 60 fraud must show that the "[c]ourt's decision was influenced by the conduct at issue") (internal quotation and citation omitted). Finally, a Rule 60(b) motion "cannot serve as an attempt to relitigate the merits." Fleming, 865 F.2d at 484.

Barry cannot prevail because, as discussed below, he has simply not shown that the government committed fraud.

## Analysis

Barry alleges a total of 41 distinct occurrences or "grounds" for relief and has grouped them into six broad categories.

### I. Grounds 1 through 7

Barry points to seven passages in the government's brief in opposition to his 2255 motion that, he insists, so inaccurately paraphrase some aspect of *his* brief that they amount to a fraud on the Court requiring relief from the judgment entered against him.

Mindful that Barry has also moved for the Court's recusal on the theory that the language and tone of its past decision suggest bias, the Court nevertheless cannot mince words here: as a threshold matter, the government simply could not have defrauded the Court as Barry suggests unless the Court had consulted *only* the government's brief to learn the content of *Barry's* claims—which is simply not how this Court operates. A party does not commit fraud upon this

3

Court merely by summarizing, characterizing, and paraphrasing an adversary's argument—with all the risk of imperfection with which those activities are fraught—when the original materials are a matter of public record and before the Court.

Further, the few discrepancies between Barry's 2255 brief and the government's account of it that Barry has unearthed are semantic or miniscule, and in any event immaterial to the ultimate disposition of Barry's habeas application.

A representative example, ground 5, is recounted here in full to illustrate Barry's plodding, exacting methodology and its stark disproportion to the trifling nature of the claim it purports to advance.

Barry begins his "ground 5" discussion by referencing a specific branch of the ineffectiveness claim raised in his Section 2255 papers: he writes that he had "cited counsel for allowing false testimony that [Barry] had written 1,623 bounced checks [to go] unchallenged." Rule 60 Mot., ECF Doc. 11 at 8. He then reproduces a passage from the government's Section 2255 opposition brief to show, in his words, "what the government said [his 2255 brief] argued." Id. The allegedly offending passage states as follows: "Barry now argues that counsel should have objected to this testimony because it is suggested that an insufficient funds fee means that a check bounced."[3]

Barry next reproduces a passage from the brief he submitted in support of his Section 2255 application to show "what [his 2255 brief] *actually* said" counsel should have done. Rule 60 Mot., ECF Doc 11 at 8. The passage states as follows: "A few simple questions on cross

---

[3] The passage appears on page 32 of the government's Section 2255 opposition brief (hereinafter, "Gov't 2255 Br.") and is reproduced on page 8 of Barry's Rule 60 motion.

would have easily exposed the error."[4]

Finally, Barry asserts that a close comparison of the two reproduced passages yields evidence of governmental fraud:

> Note [in Barry's 2255 Brief] the complete absence of the words "object" or "objection." Counsel was faulted for not utilizing cross examination to expose the falsity of the 1,623 bounced checks testimony. Rationale [sic] for the government's purposeful misrepresentation is readily apparent. If the Petition had actually proposed that counsel should have objected on the grounds that the testimony was false, that would have been a request for a futile absurdity. One cannot object that testimony is false. It must be shown to be false by other evidentiary means, or exposed as such during cross-examination—the precise tactic the Petition called for counsel to have employed.

Rule 60 Mot., ECF Doc. 11, at 8.

Barry places great weight on a distinction without a material difference: the thrust of his Section 2255 complaint about the bounced-checks testimony, as reflected in the applicable point heading of his Section 2255 brief, was that counsel failed to *challenge* it. See Barry's 2255 Br. at 33, Point 11. Counsel permitted false testimony when proof of the falsity thereof was in discovery material and despite being made aware of it").

Even accepting, however, the procedural and substantive differences between a formal objection (which goes to admissibility) and cross-examination (which goes to accuracy, probity, and weight), no error or injustice relating to those differences occurred in Barry's 2255 proceeding as a result of the government's treatment of the issue. In the decision denying habeas relief, this Court concluded that "counsel's decision not to call further attention to the incriminating facts [established by the bounced-checks evidence] is sound strategy by any measure" and therefore not deficient under Strickland's first prong. Barry, 2015 WL 3795866 at

---

[4] The passage appears on page 35 of Barry's brief in support of Section 2255 relief (hereinafter, "Barry's 2255 Br.") and is reproduced on page 8 of Barry's Rule 60 motion.

*9. Notably, the Court's analysis accounted for *both* objection and cross-examination as available vehicles. See id. (Court framed issue as whether "counsel *either should have objected* to [the government analyst's] testimony *or* used . . . discovery materials *to establish, through cross-examination*, that certain of the checks alleged to have bounced were in fact paid") (emphasis added). Moreover, as already noted, this ruling was an *alternative* to the Court's dispositive ruling that whether or not counsel's performance was deficient, Barry could not show Strickland prejudice. Id. at 3-5.

The other grounds in this category fail to establish a basis for Rule 60 relief for the same reasons: none makes even the remotest showing of Rule 60 fraud. See Pena, 859 F. Supp. 2d at 699; Fleming, 865 F.2d at 484. Further, any discrepancies between the government's summary and the original material are either wholly semantic or otherwise trivial and in any event not material to the Court's § 2255 rulings. Although the assertions of fraud are so strained that summary rejection would be the appropriate judicial response, the Court briefly addresses each allegation separately.

In ground 1, Barry complains that the government "purposefully distorted the wording" of his brief when it stated that "[c]ontrary to Barry's claim, the liquidity (or lack thereof) of Barry's underlying investments was not a primary focus of the case against him," whereas Barry's brief stated that "[a]nother component of the government's allegations was that of misrepresentation of liquidity of investment" but did not use the words "focus" or "primary focus." Rule 60 Mot., ECF Doc. 11, at 9. The government's use of the words "primary focus" is not a material misrepresentation of Barry's position; his § 2255 brief plainly treats the liquidity issue as substantial. See Barry's 2255 Br. at 8-9.

In ground 2, Barry asserts that the government "opted to tell the Court that [Barry's brief]

6

said the exact opposite of what it actually said, when the government wrote that "Barry is wrong when he claims that the length of his counsel's closing argument is proof of ineffective assistance," whereas Barry's brief had asserted that, "[a]lthough the brevity of a summation is not in itself determinative of insufficiency, here the closing argument was lacking in many crucial elements." Rule 60 Mot., ECF Doc. 11, at 9-10. The assertion of fraud is frivolous. In any event, the Court reviewed the summation's contents and length, applied the principle that "[d]ecisions as to the content of a closing argument are quintessentially strategic and tactical," and concluded that, "in this case the summation reflected a sound strategy that satisfies the objective standard of reasonableness." Barry, 2015 WL 3795866 at *10.

In ground 3, Barry asserts that the government committed fraud when its 2255 opposition brief asserted that Barry had failed to cite authority for the proposition that the "'tactical' decision not to call defense witnesses stops being tactical when the list of potential witnesses is extensive." Rule 60 Mot., ECF Doc. 11, at 11. The government did not commit fraud: Barry's 2255 brief complained of counsel's failure to call any defense witnesses, and noted that the list of potential witnesses was "extensive." Barry's 2255 Br. at 12. In any event, in finding neither prejudice nor deficient performance under Strickland, the Court gave plenary consideration to each of the categories of witnesses Barry would have had counsel call. Barry, 2015 WL 3795866 at *6-7.

In ground 4, Barry asserts that, when responding to his habeas claim that counsel was ineffective by stipulating to the admission of excerpts of audio tapes of creditor meetings from Barry's bankruptcy case without seeking to introduce other portions under the rule of completeness, the government committed fraud by falsely telling the Court that Barry asked for a "blanket opportunity to offer his own prior statements." Rule 60 Mot., ECF Doc 11, at 12. The

7

government did not commit fraud, but fairly responded to Barry's claim by arguing that, under Second Circuit law, "the rule of completeness… does not provide a defendant with a blanket opportunity to offer his own prior statements just because the government has introduced the defendant's inculpatory statement" but instead requires a defendant to make one of the showings the completeness rule requires. Gov't 2255 Br. at 30.

In ground 6, Barry asserts that the government committed fraud by asserting in its brief that Barry cited only three specific instances in which counsel was ineffective, whereas he claims he cited a total of seven. Rule 60 Mot., ECF Doc 11 at 15. There was no fraud: as noted, the Court's 2255 decision addressed 23 distinct instances of alleged ineffectiveness.

In ground 7, Barry asserts that, when responding to his claim that counsel was ineffective for failing to hold the Court to the Sentencing Guidelines requirement that actual loss must constitute reasonable foreseeable pecuniary harm, the government committed fraud by asserting that "Barry cites no authority in support of this curious claim" when in fact Barry had cited the applicable guideline provision, U.S.S.G. § 2B1.1 ("the reasonably foreseeable pecuniary harm . . . that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense"). Rule 60 Mot., ECF Doc. 11, at 16. The government fairly responded to Barry's § 2255 claim: the government brief also cited guideline §2B1.1's definition of actual loss, but argued that there was no authority for the logic of Barry's § 2B1.1 arguments.

As the foregoing demonstrates, Barry's invocation of Rule 60's fraud provisions here is gravely suspect, and the strategy too transparent to ignore: rather than originating from a *bona fide* belief that anything remotely approaching the level of fraud has been perpetrated upon this Court, the motion is merely casting the government's opposition as fraud in an effort to reassert the arguments raised in the initial 2255 papers and fully adjudicated by this Court.

## II. Grounds 8 through 18

These eleven grounds assert Barry's claim that the government, through its § 2255 opposition brief, committed a fraud upon the Court by mispresenting the content of the trial record. They exhibit the same fatal defect as the first seven: *i.e.*, they are predicated on the erroneous notion that the Court did not read the trial record but instead relied exclusively on the government's presentation to refresh itself as to the contents of the record. Simply, a party does not commit fraud by inexactly summarizing a portion of the record when the original is before the Court.

Further, much like the first block of claims, these eleven grounds illustrate discrepancies of such a trifling nature that they hardly warrant full recitation and attention here. Plainly, none suggests fraud on the part of the government. Once again, a representative example from this block of claims, ground 10, is illustrative. Barry asserts that, "[i]n support of [his Section 2255] allegation that counsel permitted speculative responses by government witness Lundberg," he relied on the following excerpts from the trial transcript:

> Q. Did the Leverage[ ] Group ever have any other office than what is depicted in the photo 255A here?
> A. No, not to my knowledge.
>   . . .
> Q. Was Anthony Fischetti at any time the executive vice-president of the Leverage[ ] Group Funds?
> A. No, not that I know of.[5]

Barry then expands upon the significance, to him, of these excerpts:

> It can be clearly seen above that the witness answered the questions with "No," before adding words which fall into the category of that which goes without saying. Obviously, if a witness is being asked if something existed or had occurred, the scope of his answer is limited to what he knows, i.e., no one is

---

[5] The excerpt is from pages 870-871 of the Trial Transcript, reproduced at page 15 of Barry's Rule 60 Motion.

9

> omnipresent. What remains unquestionably true however is that both questions were answered in the negative. (Rule 60 Mot., ECF Doc. 11 at 15).

Finally, Barry asserts that "[t]his is not however what the habeas Court was told that the record showed" and, in support, reproduces the allegedly offending passage from the government's brief—to wit, "...Lundberg *simply said* he didn't know one way or the other . . ."[6]

His Rule 60 argument then continues as follows:

> Plainly that is not what Lundberg said. Furthermore, the government's misrepresentation here is rendered more blatant by the use of the phrase "simply said." Again, this unequivocally conveys the averment that he said nothing else, thereby trying to hoodwink the Court that the two responses – the "No"s in the transcript—aren't there. Motive for doing so is plain to see. This particular claim of counsel ineffectiveness pertained to speculative answers by a witness. Make the answers disappear from the eyes of the Court, and the speculation likewise vanishes along with counsel's ineffectiveness. But, the witness did answer in both instances and the government falsely claimed he didn't.

Rule 60 Mot., ECF Doc. 11, at 15-16.

Plainly, the government did not engage in fraud in its summary of Lundberg's testimony. Further, Barry's hairsplitting is of no moment: as Barry notes in the passage quoted above, he cited the Lundberg testimony in his § 2255 motion to support of his claim that his lawyers were ineffective for not challenging the testimony as speculative, and in the decision denying habeas relief, this Court rejected the claim as "baseless" because "[c]ounsel *did* object to Lundberg's testimony for precisely this reason." Barry, 2015 WL 3795866 at *7 (emphasis in original).

The remaining grounds in this category, numbers 8, 9, 10, 12, 13, 14, 15, 16, 17 and 18, are summarily rejected: each fails to establish a basis for Rule 60 relief for the reasons set forth

---

[6] The passage is from page 19 of the government's § 2255 opposition brief, emphasis added by Barry.

above in the context of the discussion of Grounds 1-7.[7]

### III. Grounds 19-21

In these three grounds, Barry claims that the government's § 2255 opposition brief misrepresented to the Court the content of Barry's off-the-record proffer sessions.

Ground 19. In opposition to Barry's § 2255 claim that counsel should have better presented his claim that he had wide discretion to select investment strategies, the government asserted, *inter alia*, that, "[i]f counsel would have pushed harder on the 'existence of discretion' defense, the government would have easily undermined that effort by introducing Barry's contradictory proffer statements." Gov't 2255 Br. at 9. Barry now says this statement reflects "dishonest[y]" because, he claims, the government "knew that the proffer statements contained no statements in contravention of discretion." Rule 60 Mot., ECF Doc. 11 at 35. Barry's assertion is without merit: the government's summary of Barry's proffer, to which Barry did not object,[8] amply describes Barry's inculpatory admissions. Additionally, the government's representation of the content of the proffer did not affect the Court's ruling. Although the Court did agree that, had counsel pressed the matter further, the door could have been opened to admission of the proffer statements, the principal basis for denying that branch of Barry's ineffectiveness claim was, as discussed, lack of prejudice. Alternatively, the Court's ruling

---

[7] Two other telling examples are grounds 8 and 9. In 8, Barry asserts that, when addressing his §2255 claim that counsel delivered a deficient opening statement, the government's brief was fraudulent because it stated that counsel presented Barry's defense "in general terms" whereas, according to Barry, the opening was "pointed and easily disprovable." Rule 60 Mot. at 12. In 9, Barry quarrels with the government's use of an adverb: he says the government committed fraud when describing the Court's sidebar remark during the examination of witness Robert Lundberg because it wrote that the Court "simply directed the government to lay a better foundation" when, contrary to the implication of the word "simply," the Court's remarks continued.

[8] See *United States v. Barry*, 09 CR 833, Gov't Motion in Limine, ECF Doc. 37 at 6-8, and Barry's Opposition, ECF Doc. 41.

11

noted that, contrary to Barry's 2255 assertion, counsel *did* place the discretion theory before the jury. Barry, 2015 WL 3795866 at *4.

Ground 20. This claim revisits, yet again, Barry's 2255 claim that counsel was ineffective for failing to press for a greater foundation for the testimony of government witness Robert Lundberg. See Barry, 2015 WL 3795866 at *7-8 (rulings on branches 6, 7, and 8 of Barry's 2255 claim, involving alleged "speculation" by Lundberg, his prior consistent statements, and his credibility). In the Rule 60 motion, Barry attacks as fraudulent the government's assertion that "any objection by counsel likely would have triggered the admission of Barry's pre-indictment proffer statements which were consistent with Lundberg's testimony," specifically, Barry's statement that "[a]lthough [he] initially invested Leverage Group money in stock options, he began investing in real estate regularly in the 1980s and 1990s." Gov't 2255 Br. at 23.

Barry concedes that his proffers "did include a statement that real estate investing began in the 1980's," but argues that the government assertion was nevertheless "deceptive." Rule 60 Mot. at 41. In a string of assertions that are difficult to untangle, Barry appears to be merely reasserting the basic lack-of-foundation challenge advanced in his 2255 papers. See Rule 60 Mot. at 37 ("Even if there had been statements made in the proffer sessions which were consistent with the witness testimony, a foundation for that testimony was nevertheless required to be elicited into the record."). Ground 20 therefore does not present a basis for Rule 60 relief.

Ground 21. This claim revisits branch 11 of Barry's 2255 ineffectiveness claim, a challenge to counsel's handling of government analysist Wendy Spaulding's testimony that Barry wrote a total of 1,623 bounced checks to his victims. See Barry, 2015 WL 3795866 at *9. The Rule 60 motion asserts that the government committed fraud by asserting in its 2255

12

opposition brief that, "Barry fails to recognize that he himself referred to his insufficient funds checks and 'bounced' checks when, during his pretrial proffers, he admitted that he 'frequently issued checks to his investors knowing that there was a high likelihood that they would bounce.'" Gov't 2255 Br. at 33. The government did not commit fraud: the assertion in its brief quotes from the summary of Barry's proffer contained in its motion *in limine* and, as noted, although Barry opposed that motion he did not dispute the contents of the proffer summary.

## IV. Grounds 22 through 24

Here, Barry claims that "the government attorney was derelict in his duty as an officer of the court to disclose that he had elicited what he knew to be habeas [p]etition-relevant false or blatantly misleading testimony in the underlying criminal case." Rule 60 Mot. at 41.

Barry's own casting of this Rule 60 set of claims reveals them to be reassertions of already litigated trial and section 2255 claims re-cast, quite belatedly, as somehow involving prosecutorial fraud. This is not a proper invocation of Rule 60's fraud provisions.

In any event, the claims of fraud are meritless. Ground 22 revisits, yet again, Barry's 2255 claim that Wendy Spaulding's bounced-check testimony was false. In his 2255 papers, he claimed that counsel was ineffective for failing to expose it as false, see Barry's 2255 Br. at 33-35 (claim 11) and 38-40 (claim 13); now he has recast this claim as fraud by asserting that the government knew all along that the testimony was false and should have disclosed as much to the Court. The assertion is baseless: the mere reframing of a stale, adjudicated claim, absent more, does not raise the specter of fraud. Further, Barry has not shown that Spaulding's testimony was false.

Ground 23 relates to Barry's 2255 claim that counsel inadequately cross-examined FBI Special Agent Theodore Cacioppi, who testified that Barry's firm had bounced several large

13

checks. See Barry's 2255 Br. at 43-44. His Rule 60 claim is that, when addressing this claim in its opposition brief, the government committed fraud because it spoke of testimony "concerning certain checks" instead of referencing separately the three checks mentioned in Cacioppi's testimony. Rule 60 Mot. at 45. The variance is inconsequential and certainly not fraudulent.

Ground 24 revisits Barry's 2255 claim that counsel was ineffective for failing to test the validity of the victim loss affidavits that were used to calculate the total loss caused by Barry's crime. As Barry is aware, this Court found his claim meritless in light of the Second Circuit's decision on the underlying issues. See Barry, 2015 WL 3795866 at * 12. As quoted in this Court's 2255 decision, the Circuit found that "[t]he factual findings of the PSR, which the district court adopted, presented detailed information culled from victims" and that "this was sufficient to support a 22-level loss enhancement pursuant to U.S.S.G. § 2B1(b)(1)(l) (adding 22 levels for loss exceeding $20 million) and a 6–level victim enhancement pursuant to U.S.S.G. § 2B1.1(b)(2) (C) (adding 6 levels for offense involving more than 250 victims)." Id. (quoting, Barry v. United States, 502 Fed. App'x 85, 88 (2d Cir. Nov. 13, 2012), cert. denied, 134 S. Ct. 328 (2013)).

Consistent with his methodology throughout this Rule 60 travesty, Barry now says it was an act of fraud for the government to have disagreed with his 2255 assertion that the victim affidavits were a flawed basis for calculating loss. The Circuit's rulings spell finality to Barry's prolonged challenged to his sentence and foreclose all talk of government fraud in this respect.

## V. Grounds 25 through 41

Barry asserts that the above-discussed alleged instances of fraud "are part of a pattern of serious similar misconduct" by AUSA Jeffrey A. Goldberg. Grounds 25 through 28 challenge Goldberg's handling of the pre-trial and trial phases of Barry's criminal case; grounds 29 through

14

40 involve Goldberg's role in Barry's appeal; and ground 41 involves a Central District of California case Goldberg handled.

Like the claims already addressed, those advanced in support of the alleged pattern of fraudulent conduct are entirely frivolous. Most are, like those already discussed, based on semantic hairsplitting, and many are reassertions either of claims already raised and adjudicated in the initial 2255 proceeding, or of the claims advanced in earlier sections of the Rule 60 motion and already addressed by the Court. Although an appropriate judicial response would be to say nothing more, the Court briefly addresses each ground.

### A. The Trial-related claims (Grounds 25-28)

Ground 25 revisits, for the second time in the Rule 60 motion, Barry's 2255 and trial claim that the testimony of FBI Special Agent Cacioppi concerning bounced checks was false. This time, Barry argues that the testimony coupled with the language on the bank's bounced check notice offered as an exhibit establishes that AUSA Goldberg knew the testimony was false and "came to the very edge of suborning perjury." Rule 60 Mot. at 57. There is simply no basis for Barry's view of the matter.

Ground 26 revisits, for the second time in the Rule 60 motion, the 2255 and trial claim that the testimony concerning the 1,623 bounced checks was false, but also attacks as fraudulent the prosecutor's use of the testimony during summation. Barry's impassioned rhetoric cannot revive an already adjudicated claim, much less give it substance, and in any event, it does not establish prosecutorial fraud.

Ground 27 asserts that Goldberg deceived the jury and the Court during his rebuttal summation when he asserted that "there is no evidence in the record ...other than Philip Barry's self-serving statements—that th[e] land that he bought upstate is worth anything approaching

15

what he owes his clients." Rule 60 Mot. at 61 (quoting the trial transcript at 1119-1120). This ground also includes Barry's quarrel with the significance of trial testimony addressing the same subject and related admissibility rulings. These are not cognizable fraud claims for Rule 60 purposes.

Ground 28 revisits Barry's complaints relating to the proffer sessions. He argues that the government committed fraud by filing the summaries publicly on the Court's docket, as part of a motion *in limine*, rather than under seal. He further claims that this act implicated his right to a fair trial by creating the risk that the jury might consult the proffer summaries despite the Court's clear instruction to the contrary (See Trial Tr. at 30), and by prejudicing the Court against him. Finally, Barry also quarrels with the accuracy of portions of the proffer summaries themselves. Barry, however, has not previously sought an order sealing that motion, nor would there likely have been a basis to grant any such application. The only material question here, however, is whether the public filing is fraud for Rule 60 purposes, and of course the answer to that question is no.

B. The Appeal-Related Claims (Grounds 29-40)

In this block of claims, Barry asserts that the government committed fraud by inexactly summarizing or paraphrasing in its appellate brief certain of Barry's appellate arguments or portions of the district court record. These claims, like those attacking the government's 2255 opposition brief, involve quarrels with language of an inconsequential nature hardly worthy of full explication here.[9]

---

[9] Barry claims that the following assertions in the government's appellate brief are fraudulent: Ground 29: "Barry told people that he had mastered the art of stock options and that they were the Leverage Group's *only* investment vehicle" Barry quarrels with the use of the word "only," citing to testimony that he also mentioned commodities, metals, and stocks.

16

More fundamentally, the claims rest on the untenable premise that a panel of the United States Court of Appeals for the Second Circuit was defrauded because it did not read the trial

---

Ground 30: "the government proved its case primarily by analyzing and presenting Leverage Group record and other documents seized from Barry's offices." Barry quarrels with the word "seized," asserting that he provided all such records voluntarily.

Ground 31: "...the total closing balances listed on the Leverage Group investors' account statements dwarfed Barry's cumulative bank balances. In other words, the various balances set forth in the investors' account statements simply did not exist." Barry quarrels with the reasoning, asserting that the government knew that almost all of Leverage Group's funds were invested in real estate during the time period for which the bank comparison was made.

Ground 32: "...most of the $192,000 that was paid out in case during that time period went to Barry." Barry says this is "technically true" but deceptive because it omits that although Barry cashed the checks, he didn't keep or spend the money.

Ground 33: "...between February 2005 and July 2008 alone, Barry bounced more than 1,600 checks..." Barry resurrects, yet again, his quarrel with the accuracy of the bounced checks testimony.

Ground 34: The government's quoting of Barry's note to himself, which stated, "I'm just a crook running a Ponzi scheme..." Barry argues that the note was quoted out of context.

Ground 35: "In mid-2008, James Constantino, a Vice President of M&T Bank...also contacted Barry about suspicious activity in his account..." Barry says the word "suspicious" misrepresents the witness's testimony.

Ground 36: "Barry also misrepresented his credentials and business to Frances. He told Frances he was registered with the [SEC]" but SIPC employee Linda Siemers "testified that SIPC had no record of the Leverage Group Funds (or of North American Financial, another name for Leverage Group), that those firms were not registered with the SEC and that neither was a SIPC member." Barry's quarrel here is that Siemers addressed only SIPC membership, and that the question of SEC registration was less clear, citing a pre-trial colloquy where the government represented, in substance, that Barry was not registered with the SEC "in any meaningful way."

Ground 37: The government's assertions about the content of the proffers: Barry says these were deceptive because they appeared in the section of the brief bearing the heading "The Trial."

Grounds 38-39: "...during his sworn bankruptcy testimony, Barry lied about the nature of his investment fund. For example, Barry testified that the Leverage Group was an investment business that 'invested in... stocks and options,' even going so far as to claim that he purchased 'almost exclusively New York Stock Exchange traded companies." Barry says the government fraudulently concealed that, in the relevant testimony, he had also stated that his business invested in real estate; and asserts that the reference to NYSE-traded companies was taken out of context.

Ground 40: "Barry testified [at a bankruptcy hearing] that between 2003 and early 2009, he received $10 million from investors. But this statement was grossly misleading [because] the government proved at trial [that] Barry knowingly received more than $26 million into his Leverage Group bank accounts" during those years. Barry's quarrel here is, first, that his exact testimony was that "[a] *very rough estimate* would be *about* 10 million" (emphases Barry's), and second, that the government's method of arriving at the figure of $26 million was flawed.

17

record, the brief submitted on Barry's behalf by the Federal Defenders or Barry's supplemental pro se brief—but instead consulted only the government's appeal brief to learn the content of those other materials. Further, each claim is an attempt to reargue what the trial evidence did or did not show, or revive other evidentiary claims that were or could have been raised on appeal, which are simply not cognizable on Rule 60. Finally, on their merits, the claims are entirely foreclosed by the Circuit's finding that there was "overwhelming evidence of Barry's guilt" and its "confident[ ] conclu[sion] that any evidentiary error was harmless." Barry, 502 Fed. App'x at 87.

C. Ground 41

Finally, Barry argues that AUSA Goldberg's pattern of alleged fraudulent conduct extended to other cases, and cites United States v. Aguilar, 831 F. Supp. 2d 1180 (C.D. Ca. 2011), where Goldberg was a member of the prosecution team, and where the court overturned the convictions because the government withheld an FBI agent's false grand jury testimony, in violation of Brady. Barry's case and Aguilar, of course, are entirely unrelated. This claim warrants no further discussion.

**THE RECUSAL MOTION**

**Legal Standard**

The relevant statute provides that, "[a]ny justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Additionally, a judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). "The goal of section 455(a) is to avoid even the appearance of partiality." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 865 (1988) (internal quotation and citation omitted).

The Court, therefore, must consider "whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality." S.E.C. v. Razmilovic, 738 F. 3d 14, 29 (2d Cir. 2013), cert. denied, 134 S. Ct. 1564 (2014). See also United States v. Yousef, 327 F.3d 56, 169 (2d Cir.) (test is whether "an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal, or alternatively, whether a reasonable person, knowing all the facts, would reasonably question the judge's impartiality") (internal quotations, citations and alteration omitted), cert. denied, 540 U.S. 993 (2003).

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and "can only in the rarest of circumstances evidence the degree of favoritism or antagonism" necessary for recusal. Liteky v. United States, 510 U.S. 540, 555 (1994). Accord Chen v. Chen Qualified Settlement Fund, 552 F.3d 218, 227 (2d Cir. 2000) ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse ruling, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality"); Toliver v. N.Y. City Dep't of Corr., 202 F.Supp.2d 328, 338 (S.D.N.Y. 2016) (section 455(a) recusal standard is met only in "rare cases") (internal quotation and citation omitted).

Finally, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited...[A] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." Residents and Families United to Save Our Adult Homes v. Zucker, 2017 WL 5641043, at *2 (E.D.N.Y Nov. 22, 2017) (internal quotation, citation and alteration omitted).

## Analysis

Barry has not shown this to be the rare case in which recusal is required. Although he passionately argues otherwise, the Court's bluntness in assessing his legal and factual assertions is simply not bias. Further, the content and tone of the remarks challenged as impartial derive exclusively from the Court's role in these proceedings, rather than other sources. See United States v. Carlton, 534 F.3d 97, 100 (2d Cir. 2008) ("[O]pinions held by judges as a result of what they learned in earlier proceedings in a particular case are not ordinarily a basis for recusal") (internal quotation marks and citation omitted). Cf. Liteky, 510 U.S. at 555 (disapproving or hostile remarks "may" support a bias challenge "if they reveal an opinion that derives from an extrajudicial source"). The motion for recusal is denied.

## CONCLUSION

For the reasons discussed, (i) Philip Barry's motion under Federal Rule of Civil Procedure Rule 60 for relief from the judgment entered pursuant to this Court's Memorandum and Order dated June 17, 2015, is denied; and (ii) Barry's motion for recusal is also denied. Because Barry has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
January __, 2018

s/ RJD
RAYMOND J. DEARIE
United States District Judge